## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL S. "MIKE" KIEFNER, an individual Oklahoma resident, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 13-CV-714-TCK-FHM |
| DANIEL S. SULLIVAN, an Oklahoma resident, individually and in his official capacity; ELLEN CASLAVKA EDWARDS, an Oklahoma resident, individually and in her official capacity; GRAND RIVER DAM AUTHORITY, an agency of the State of Oklahoma; and BOARD OF DIRECTORS NOS. 1 thru 7, in their official capacities only, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Before the Court are: (1) a motion to dismiss all claims asserted against Defendant Grand

River Dam Authority ("GRDA"), Defendant Ellen Caslavka Edwards ("Edwards") in her official

capacity, and Defendant Daniel Sullivan ("Sullivan") in his official capacity (Doc. 16); a motion to

dismiss all claims asserted against Edwards in her individual capacity (Doc. 15); and (3) a motion

to dismiss all claims asserted against Sullivan in his individual capacity (Doc. 14). Also before the

Court is Plaintiff's motion for leave to amend (Doc. 47), which was filed after the motions to

dismiss.

## I.    Motion for Leave to Amend (Doc. 47)

On September 30, 2013, Plaintiff filed his Petition in Craig County, Oklahoma. Defendants

GRDA, Edwards, and Sullivan removed to this Court based on the existence of a federal claim.

Plaintiff seeks to amend his Petition for the limited purposes of (1) alleging exhaustion of

administrative remedies under the Oklahoma Government Tort Claims Act ("OGTCA"), (2) adding

GRDA as a defendant to its existing tort claims for constructive fraud and civil conspiracy, and (3) asserting these tort claims against Edwards and Sullivan in their official capacities, in addition to their individual capacities.[1] Except for these limited amendments, all other allegations remain the same as those in the original Petition.

Federal Rule of Civil Procedure 15(a)(2) provides that a court should "freely give leave when justice so requires." Courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City, and Cnty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (quotation marks omitted). Plaintiff's Petition stated that tort claims against GRDA would be filed, if they were not resolved during the OGTCA administrative process. (Pet. ¶ 43.) Plaintiff first discovered that his OGTCA claim was denied on January 14, 2014. Approximately two weeks later, and prior to the deadline in the Court's Scheduling Order, Plaintiff sought amendment. Under these circumstances, Defendants cannot show undue delay, prejudice, bad faith, or any repeated failures to cure by Plaintiff. Defendants argue, however, that (1) the proposed amendments are futile for reasons previously asserted in the motions to dismiss, and (2) the Court should address arguments made in the motions to dismiss the original Petition, prior to ruling on the motion for leave to amend. Essentially, Defendants do not want to begin the briefing process anew following amendment.

In the interest of efficiency, and because the vast majority of Defendants' arguments apply equally to both the original and amended allegations, the Court will (1) grant leave to amend and

---

[1] As noted by the GRDA, at least the constructive fraud claim was already asserted against Edwards and Sullivan in their official capacities. (*See* Pet. ¶ 38.) Nonetheless, the Court grants Plaintiff leave to amend to further clarify such claims and/or allege exhaustion.

allow Plaintiff to file the First Amended Complaint ("FAC") attached to its motion, (2) construe all pending motions to dismiss as motions to dismiss the claims asserted in the FAC, and (3) allow Defendants to file additional motions to dismiss, if desired, following Plaintiff's actual filing of the FAC. This process allows Plaintiff, who has complied with all rules and diligently sought amendment, to file his FAC in his desired format, while preventing the need for any duplicative briefing.

## II.     Factual Allegations

The following facts are alleged in the FAC. Plaintiff Michael S. Kiefner "was and is" an employee of GRDA, an agency of the State of Oklahoma. (FAC ¶ 1.) On or around 2004, Plaintiff was hired as General Counsel for GRDA, and Plaintiff and GRDA subsequently entered into numerous other employment agreements. Plaintiff's most recent employment agreement is dated December 1, 2010 ("Employment Agreement"). Such agreement (1) describes Plaintiff's title as Assistant General Manager and Chief Operating Officer,[2] (2) provides a fixed term of employment from December 1, 2010 through December 1, 2015, (3) sets a salary of $180,000 per year, (4) permits termination only for cause outlined therein, and (5) permits Defendant Sullivan, GRDA Chief Executive Officer and General Manager, to set Plaintiff's responsibilities and duties. (Ex. A to GRDA's Mot. to Dismiss.)[3]

---

[2] Plaintiff also alleges that he "last served" as Assistant General Manager and Director of Land and Property, (FAC ¶ 1), although this is not the description listed in the Employment Agreement.

[3] The Employment Agreement is referenced in the FAC, and the Court may consider its terms without converting the motion to one for summary judgment. *See Geras v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1314-15 (10th Cir. 2011) ("We are not persuaded the district court abused its discretion when it considered evidence that was referenced in and central to the complaint while excluding materials outside the pleadings."); *In re Katrina Canal Breaches*

On or about July 25, 2012,[4] a GRDA employee informed Plaintiff that Sullivan had made unwanted sexual advances toward her.  This female employee periodically informed Plaintiff of Sullivan's continued advances over the next year.  At some point after July 25, 2012, Sullivan became aware of these reports and began taking steps to force Plaintiff's resignation.  Sullivan's efforts "grew over time" and culminated in a conspiratorial plan to "unlawfully retaliate against Plaintiff, to unlawfully cover up Sullivan's indiscretions, and to wrongfully harm Plaintiff."  (FAC ¶ 17.)  Defendant Edwards, GRDA's General Counsel, allegedly conspired with Sullivan and assisted Sullivan in removing Plaintiff from his position in order to protect Sullivan.

On or about June 20, 2013, Plaintiff was having medical problems with his legs and was advised by GRDA human resources employee Debbie Simmons that his treatment would qualify for intermittent leave under the Family and Medical Leave Act ("FMLA").  Four days later, on June 24, 2013, Sullivan demanded that Plaintiff resign, be terminated, or retire.  The reason given to Plaintiff by Sullivan was that Sullivan was receiving "pressure from the Governor and an unnamed Board Director."  (FAC ¶ 18.)  Plaintiff alleges that this premise was fraudulent, including both misrepresentations and omissions of relevant facts.  Based on this fraudulent premise, Plaintiff began negotiating the terms of a voluntary resignation with Sullivan and Edwards in order to avoid "having to work in a hostile and professionally damaging environment."  (FAC ¶ 18.)

---

*Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

[4] Construing the FAC in a light most favorable to Plaintiff, the reference to "July 25, 2013" in paragraph 14 appears to be in error.  Based on the next paragraph's reference to July of 2012, the Court assumes the date intended to be alleged is July 25, 2012.

On August 5, 2013, Plaintiff requested FMLA leave, which was granted from August 5, 2013 through August 31, 2013. On or around August 20, 2013, apparently while on FMLA leave,[5] Plaintiff made an offer of voluntary resignation that included a severance payment of $59,000. Further negotiations between Plaintiff, Sullivan, and Edwards resulted in a document entitled Agreement and Release ("Release"), which is also expressly referenced in the FAC. The Release states that Plaintiff's last day of employment would be August 31, 2013 and that Plaintiff would receive a severance payment in the amount of $55,000. Plaintiff characterizes the Release as an offer, which was "accepted by Sullivan and Edwards, conditioned on acceptance by the GRDA Board of Directors ("Board") at their meeting on September 11, 2013." (*Id.* ¶ 22.) In the event the Board did not accept the Release, Plaintiff "was to revert back to his status as an employee under the subject contract in the same status he was in on August 31, 2013." (*Id.*) On September 11, 2013, the Board held a public meeting and conducted an executive session regarding the Release but did not ultimately approve it.

After learning the Release was not approved, Plaintiff informed Edwards that he intended to return to work once the condition of his knee allowed and he was released by his physician. However, on September 13, 2013, "Defendants informed Plaintiff that he would not be reinstated." (*Id.* ¶ 77.) Plaintiff describes his separation from employment with GRDA as a "constructive termination" orchestrated and effectuated by Sullivan, Edwards, and the Board. (*Id.* ¶ 32.)[6]

---

[5] The FAC does not contain a chronological statement of facts, but the Court has endeavored to place events in the order in which they allegedly occurred.

[6] There are no details in the FAC surrounding the terms of Plaintiff's separation from employment or whether he received any severance. Some portions of the FAC indicate that Plaintiff is still technically employed by GRDA. (*See* FAC ¶ 1.) However, it appears to be undisputed that Plaintiff has not performed work for GRDA since he took FMLA leave on

In the FAC, Plaintiff asserts the following claims against GRDA: (1) breach of the Employment Agreement based on the "constructive termination" of Plaintiff without cause and GRDA's failure to pay wages and benefits owed the agreement; (2) constructive fraud based on the official actions of Sullivan and Edwards; (3) violation of the FMLA; and (4) civil conspiracy based on the official actions of Sullivan and Edwards. Plaintiff asserts the following claims against Sullivan and Edwards in their official capacities: (1) breach of the Employment Agreement;[7] (2) constructive fraud; (3) violation of the FMLA; and (4) civil conspiracy. Plaintiff asserts the following claims against Sullivan and Edwards in their individual capacities: (1) breach of the implied covenant of good faith based on Sullivan and Edwards' failures to "deal fairly and in good faith in connection with the performance of the Employment Agreement" (FAC ¶ 38); (2) constructive fraud (in the alternative to the official capacity claim); (3) civil conspiracy (in the alternative to the official capacity claim); and (4) intentional infliction of emotional distress ("IIED").

Plaintiff also asserts claims against seven unnamed members of the Board, including violation of the Oklahoma Open Meeting Act ("OOMA"), Okla. Stat. tit. 25, § 301, *et seq*. All claims are asserted against Board members in their official capacities. In their Notice of Removal, GRDA stated that "the Board of Directors, as a whole and in its official capacity, is one and the same as the GRDA itself and there is no distinction between the two, nor are they considered to be separate entities." (Not. of Removal 3 n.2.) Therefore, for purposes of this motion and unless and

August 5, 2013.

[7] Plaintiff also argues in his briefs that Sullivan and Edwards breached an implied contract. Although not set forth in the FAC, the Court has also considered whether the alleged facts support this breach of contract theory. *See infra* Part IV.B.2.

until Plaintiff makes a contrary argument, the Court construes all claims against the Board members in their official capacity as claims against the GRDA. Currently before the Court are motions to dismiss all claims.

## III. Legal Standards

Defendants move to dismiss claims based either on sovereign immunity, which is governed by Federal Rule of Civil Procedure 12(b)(1), or failure to state a claim, which is governed by Rule 12(b)(6). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id.* "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.* "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id.* "In reviewing a factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995)). Here, Defendants' jurisdictional challenges are based on the allegations in the FAC, and the Court therefore accepts those allegations as true.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550

U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*[8]

---

[8] Defendants also assert a failure to plead fraud with particularity under Rule 9(b) as grounds for dismissal. This standard is addressed separately in the Court's discussion of fraud, *infra* Part VI.A.

## IV. Contract Claims

### A. GRDA - Breach of Employment Agreement

GRDA argues that it cannot be held liable for breach of the Employment Agreement because such agreement is legally unenforceable. GRDA argues that: (1) because the agreement was for a term of more than one year and compensated Plaintiff in an amount greater than $50,000, it had to be ratified by at least four members of the Board pursuant to title 82, section 863.2 of the Oklahoma Statutes ("§ 863.2"); (2) Plaintiff has failed to allege this necessary ratification; and (3) the FAC therefore fails to state a claim. Plaintiff argues that, in light of other Oklahoma statutes granting the GRDA General Manager broad authority over setting terms of employment, ratification was not necessary.

The Court concludes that Plaintiff has pled all essential elements of a breach of contract claim against GRDA and has stated a plausible claim for relief. Specifically, he has alleged that Kevin Easely ("Easley"), acting GRDA General Manager at the time, entered into an employment agreement on behalf of GRDA and that GRDA subsequently breached that agreement by failing to comply with its term of years. In its motion to dismiss, GRDA raised unenforceability as a defense based on Easley's failure to comply with § 863.2's ratification procedure. However, this defense must be pled and proven by GRDA, not pled in the negative by Plaintiff in order to survive a Rule 12 (b)(6) motion to dismiss. *See generally* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276 (explaining that seeking to avoid or defeat a potential affirmative defense is "improper pleading because these allegations are not an integral part of the plaintiff's claim for relief and lie outside his or her burden of pleading"); 71 C.J.S. *Pleading* § 140 ("In an action on a contract, as a general rule it is not necessary for plaintiff to anticipate and negative matters of defense.").

In addition, assuming any further inquiry is necessary under the *Twombly* standard, GRDA

has not demonstrated that Plaintiff's contract claim is overly speculative in light of § 863.2.  This

general statute, which requires Board ratification of certain types of contracts, appears to be in

conflict with the more specific provision granting the GRDA's general manager authority to

"appoint such other officers, agents, and employees, fix their compensation pursuant to the

provisions of this section, *and term of office* and the method by which they may be removed, and

delegate to them such of its power and duties as the general manager may deem proper."  Okla. Stat.

tit. 82, § 864(B) (emphasis added).  It also appears to conflict with the spirit of that entire subsection,

which essentially grants the Board power to appoint a general manager but prohibits the Board from

directing or participating in the appointment or removal of any other employees.  *See id.* § 864(A)(4)

& (B).  If anything is speculative or implausible at this juncture, it is the viability of the defense

rather than the validity of the contract.[9]  Therefore, GRDA's motion to dismiss the breach of contract

claim is denied.

    B.    <u>GRDA Officials</u>

Plaintiff asserts two contractual theories of relief against Sullivan and Edwards – one for

breach of the Employment Agreement and one for breach of an "implied contract" allegedly arising

from the severance negotiations.

---

[9]  The authority cited by GRDA, *Alderfer v. Board of Trustees of The Edwards County Hospital & Healthcare Center*, 261 F. App'x 147, 150 (10th Cir. 2008), involved the question of whether a state hospital board had authority, under Kansas law, to hire a hospital administrator for a term of years and override the general rule of employment at will.  This case was resolved at the summary judgment stage, turned on precise language in Kansas statutes and case law, and did not involve a direct grant of statutory authority to fix an employees' compensation and "term of office," such as that granted to Easley in this case.  Therefore, this authority does not convince the Court that Plaintiff's claim should be dismissed under Rule 12(b)(6).

### 1. Employment Agreement

Sullivan and Edwards cannot be held liable for breach of the Employment Agreement because they are not parties thereto. The agreement was executed only by Plaintiff and Easley, on behalf of GRDA as Plaintiff's employer. Neither Sullivan nor Edwards signed or negotiated the terms of the Employment Agreement. There are no facts that could be proven and no facts alleged that potentially indicate that Sullivan or Edwards are parties to the Employment Agreement. Therefore, these officials cannot be held liable for breach of such agreement. *See Wells Fargo Bank, N.A. v. Heath*, 280 P.3d 328, 334 (Okla. 2012) ("Privity of contract is an essential element of a cause of action on a contract, or an action based on a contractual theory. As a general rule only the parties and privies to a contract may enforce it.") (internal quotation marks omitted); *Bjorklund v. Miller*, No. 08-CV-424, 2009 WL 2901214, at *10 (N.D. Okla. Sep. 3, 2009) (dismissing breach of contract claims against state officials because officials were not parties to employment agreement).

### 2. Implied Contract

Plaintiff also argues that paragraphs 19-24 of the FAC (which are part of the general factual allegations) are sufficient to plead breach of an "implied contract" against Sullivan and Edwards related to the severance negotiations and Release.[10] These paragraphs of the FAC allege that "the [terms of the Release were] conditionally offered and accepted by Sullivan and Edwards so that in the event the [Board] did not accept, [Plaintiff] was to revert back to his status as an employee under the subject contract in the same status he was in on [sic] August 31, 2013." (FAC ¶ 22.) In addition,

---

[10] Plaintiff has not argued that these cited portions of the FAC support an express contract theory, and the Court does not address such an argument.

Plaintiff alleges he informed Edwards that he intended to return to work after the Board did not approve the Release but ultimately was not permitted to do so.

"Implied contracts exist where the intention of the parties is not expressed, but the agreement creating the obligation is implied or presumed from their acts, where there are circumstances that show a mutual intent to contract." *Jones v. Univ. of Cent. Okla.*, 910 P.2d 987, 989 (Okla. 1995); *see also* Okla. Stat. tit. 15, § 33 (stating that an "implied contract is one, the existence and terms of which are manifested by conduct"). The Court concludes that the cited portions of the FAC simply do not allege the elements of an "implied contract." First, the Court observes that this theory is not alleged in the FAC and that Plaintiff, at least originally, intended this claim to be based upon the officials' breach of the Employment Agreement. Thus, most factual allegations in the FAC center on this theory.

Second, Plaintiff's "implied contract" theory does not fit the facts alleged and is not a plausible claim for relief. Under this theory, Plaintiff seeks to enforce assurances made during the severance negotiations that if the Release was not approved, his Employment Agreement would remain in effect.[11] However, these allegations hinge on assurances or promises by Sullivan and Edwards, rather than any actions or conduct implying terms not expressly agreed upon during the negotiations. Further, such an agreement is simply not necessary. If the Release did not take effect, the Employment Agreement would continue to exist as a matter of law (absent other reasons for invalidity) with or without an "implied contract" for reversion. In addition, Plaintiff's cited authority is wholly inapposite. Plaintiff cited "implied contract" cases where at-will employees are

---

[11] Notably, Plaintiff does not seek to enforce any express terms of the Release, *i.e.*, his severance terms. Instead, he seeks to enforce the terms of the original Employment Agreement.

deemed to have fixed-term contracts due to operation of handbooks, policies, or other actions taken by the employer. *See, e.g., Hinson v. Cameron*, 742 P.2d 549, 555 (Okla. 1987) (holding that an at-will employee can have an implied right to job security if certain considerations weigh in favor of something other than an at-will relationship, such as evidence of separate consideration beyond employee's services, longevity of employment, handbooks and policy manuals, detrimental reliance on oral assurances, and promotions and commendations). However, Plaintiff does not seek to create a fixed term of employment where at-will employment otherwise existed; he seeks to enforce a pre-existing fixed-term contract that was never actually replaced by the Release. It is unclear how these "implied contract" cases assist Plaintiff in asserting a claim against Sullivan or Edwards arising from the severance negotiations discussed in paragraphs 19-24 of the FAC.

Accordingly, Plaintiff cannot state a claim against these officials for breach of the Employment Agreement, and Plaintiff has not alleged facts supporting an "implied contract" claim in conjunction with the severance negotiations occurring in August 2013. Therefore, the breach of contract claims against Edwards and Sullivan are dismissed.

C.     GRDA Officials - Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that Sullivan and Edwards owed to Plaintiff "a duty to deal fairly and in good faith in connection with the performance of the Employment Agreement." (FAC ¶ 38.) Plaintiff intends this claim to sound in contract, and he merely seeks contractual damages rather than any independent tort damages. (Pl.'s Resp. to GRDA's Mot. to Dismiss 11 ("Plaintiff does not bring a tort claim for bad faith, but rather a breach of contract claim.").) Essentially, Plaintiff seeks contractual damages for breach of the actual terms of the Employment Agreement *and* for breach of the implied duty of good faith and fair dealing that applies to every ordinary commercial

contract.  *See Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004) ("Every contract

in Oklahoma contains an implied duty of good faith and fair dealing.  In ordinary commercial

contracts, a breach of that duty merely results in damages for breach of contract, not independent

tort liability.") (explaining differences between ordinary contracts and insurance contracts, to which

special duties attach) (internal citation omitted).

As explained above, neither Sullivan nor Edwards are parties to the Employment Agreement.

As non-parties to the agreement, they cannot be held liable for breach of the implied duty of good

faith and fair dealing that attached to such agreement.  *Heath*, 280 P.3d at 334 ("Privity of contract

is an essential element of a cause of action on a contract, or an action based on a contractual

theory.") (internal quotation marks omitted).  Further, the facts alleged do not support the finding

of any "implied contract" surrounding the Release and severance negotiations.  Therefore, Plaintiff's

claims against Sullivan and Edwards for breach of the implied duty of good faith and fair dealing

is dismissed for failure to state a claim.

## V.      FMLA Claims

Plaintiffs' FAC alleges:

> At all relevant times, Plaintiff was employed by GRDA pursuant to the Employment
> Agreement.  GRDA is an employer subject to the [FMLA] . . . .  Due to severe
> medical conditions, Plaintiff has been unable to work since August 5, 2013.  Under
> the terms of the Employment Agreement, Plaintiff was entitled to "sick leave" and
> to additional leave under FMLA.  On or about August 15, 2013, the Plaintiff
> requested a protected leave under the FMLA, which *the Defendants* granted until
> August 31, 2013.  On or about September 13, 2013, *the Defendants* informed
> Plaintiff that he would not be reinstated.  As a direct and proximate result *of the acts
> of Defendants*, which were discriminatory and in violation of FMLA, Plaintiff has
> suffered, and will continue to suffer, substantial damages . . . .

(FAC ¶¶ 49-55 (internal citations omitted) (emphases added).)  In his briefs in response to the

motions to dismiss, Plaintiff argues that this claim is against the GRDA and Sullivan and Edwards

in both their official and individual capacities.  The Court will address the agency/official claims separately from the individual claims.

A.      Agency/Official FMLA Claims

Defendants challenge the Court's subject matter jurisdiction over the FMLA claim asserted against the GRDA and against Sullivan and Edwards in their official capacities, arguing that such claims are barred by Eleventh Amendment immunity.  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI.  However, state sovereign immunity is not absolute; it can be abrogated by Congress *or* waived by a state that consents to suit. *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1203 (10th Cir. 2002) (emphasis added).  "[T]he requirements for abrogation and waiver are strict."  *Id.*  With respect to congressional abrogation pursuant to Article I, § 5 of the Fourteenth Amendment, "Congress must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct."  *Id.* (internal quotation marks omitted).  With respect to voluntary waiver, "there must be an unequivocal waiver specifically applicable to federal-court jurisdiction."  *Id.* (internal quotation marks omitted).

In their motion to dismiss, Defendants argue that they enjoy immunity because the FMLA's self-care provision, which is at issue in this case, is not a valid congressional abrogation of immunity.  *See Coleman v. Ct. of Appeals of Md.*, 132 S. Ct. 1327, 1330-38 (2012) (holding that, in passing the self-care provision in 29 U.S.C. § 2612(a)(1)(D), Congress failed to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented

violations") (contrasting self-care provision with family-care provision in 29 U.S.C. § 2612(a)(1)(C), which is a valid abrogation of immunity). Plaintiffs acknowledges this holding but argue that their claims are saved by the *Ex parte Young* doctrine.

The Court concludes, *sua sponte*, that GRDA, Sullivan, and Edwards waived any Eleventh Amendment immunity to which they were entitled by voluntarily removing the FMLA claim to federal court.[12] Thus, there is no need to reach the abrogation argument addressed in the parties' briefs. Tenth Circuit law is settled that "when a State removes federal-law claims from state court to federal court," it "unequivocally invokes the jurisdiction of the federal courts." *Estes*, 302 F.3d at 1206 (holding that state agency's removal of ADA claim to federal court waived immunity); *see also Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013) ("The Supreme Court has found waiver when, for example, a state . . . voluntarily invoked federal jurisdiction by filing suit in federal court, moving to intervene in federal-court litigation, or removing a case to federal court). This "waiver-by-removal" rule has been expressly pronounced in litigation against the GRDA. *See Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258-59 (10th Cir. 2009) ("[C]ourts have found waiver of Eleventh Amendment immunity when a state removes an action to federal court and then asserts Eleventh Amendment immunity[.]"); *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1256 (10th Cir. 2007) ("An arm of the state may waive its sovereign immunity by removing a case to federal court.")

---

[12] The existence of a waiver of immunity may be raised *sua sponte* because it affects the Court's subject matter jurisdiction. *Blueport Co., LLP v. United States*, 71 Fed. Cl. 768, 772 (Fed. Cl. 2006) ("The very existence of a waiver of sovereign immunity, as a species of subject matter jurisdiction, may in turn be challenged at any time by the parties, or even raised *sua sponte* by the court.").

(explaining "waiver-by-removal" doctrine but finding that it did not apply because the case pending before the court originated in federal court and that the GRDA "never had the opportunity to seek out a federal forum"). Here, GRDA filed the Notice of Removal and removed the case from Craig County, Oklahoma. Accordingly, the Court has subject matter jurisdiction over the FMLA claim based on the doctrine of waiver by removal, and Defendants' motion to dismiss based upon Eleventh Amendment immunity is denied.

B.      Individual FMLA Claims

Sullivan and Edwards first argue that the general allegations regarding "Defendants" violating the FMLA are insufficient to provide fair notice of their allegedly unlawful conduct. However, the FAC alleges that GRDA, Sullivan, and Edwards informed Plaintiff that he would not be reinstated while he was on FMLA leave, thereby interfering with his FMLA rights and/or retaliating against Plaintiff for taking FMLA leave. The Court finds these allegations against Sullivan and Edwards to be plausible and not overly speculative. Although FMLA decisions are sometimes made by human resources employees, it is plausible that Sullivan (as Plaintiff's supervisor) and/or Edwards (as general counsel) made the FMLA decision and communicated it to Plaintiff. It is made more plausible by Plaintiffs' allegations that these two employees desired his removal from the company and were therefore involved in any allegedly unlawful decisions regarding his FMLA leave. Accordingly, the Court rejects this argument regarding the generality of Plaintiff's allegations.

Sullivan and Edwards further argue that they may not be deemed "employers" under the FMLA in their individual capacities. The FMLA defines "employer" as follows:

The term "employer" --
(I) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
(ii) includes –
      *(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer*; and
      (II) any successor in interest of an employer;
(iii) includes any "public agency", as defined in section 203(x) of this title; and
(iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A) (emphasis added).

The Tenth Circuit has expressly held that a suit for money damages against a state officer in his individual capacity is not barred by Eleventh Amendment immunity, even where the state was obligated by statute to indemnify the state officer for any FMLA damages recovered. *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132-33 (10th Cir. 2001) (reasoning that a "state cannot extend its sovereign immunity to its employees by voluntarily assuming an obligation to indemnify them" and rejecting argument that the state was the "real party in interest" to the individual capacity FMLA claim). Because the case was on interlocutory appeal of immunity rulings, the court did not reach the statutory argument of whether the term "employer," as used in the FMLA, should be interpreted to "include individual supervisors." *Id.* at 1135. Thus, the Tenth Circuit has rejected an immunity argument but has not squarely addressed the interpretive statutory question presented here.

Other Circuit Courts of Appeals are split on the question of whether public employees may be deemed "employers" under the FMLA and therefore held individually liable for money damages. *Compare Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003), *and Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999) (finding individual public employees are not "employers" under the FMLA), *with Modica v. Taylor*, 465 F.3d 174, 184-86 (5th Cir. 2006), *and Darby v. Bratch*, 287

F.3d 673, 680-81 (8th Cir. 2002) (finding individual public employees fall within scope of FMLA). Lacking express Tenth Circuit guidance, district courts in Oklahoma have followed the Fifth and Eighth Circuits and held that individual public employees satisfy the definition of "employer" in the FMLA. *See Roberts v. LeFlore Cnty. Hosp. Auth.,* No. CIV-13-189-KEW, 2014 WL 1270422, at *4 (E.D. Okla. Mar. 26, 2014) (citing *Cornforth* and reasoning that "it would appear to be an academic exercise to reach the conclusion in *Conforth* [sic] if individual liability could not be conferred on public employees"); *Jeffers v. Redlands Comm. Coll. Bd. of Regents,* No. CIV-11-1237-HE, 2012 WL 137412, at *2 (W.D. Okla. Jan. 18, 2012) (holding that the "definition of 'employer' is inclusive and subsections (ii) and (iii) should be read together").

This Court agrees with the reasoning of these Oklahoma district courts, as well as the reasoning set forth by the Fifth and Eighth Circuits. The Court therefore holds that a state employee sued in his individual capacity may be deemed an "employer" under the FMLA if that individual "acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).[13] Accordingly, Sullivan and Edwards' motion to dismiss the FMLA claim asserted against them in their individual capacities is denied.[14]

---

[13] If and to the extent Sullivan and Edwards contend that they do not factually satisfy the definition of one who acts, directly or indirectly, in the interest of the GRDA to any of GRDA's employees, such argument can be made at later stages of the proceeding. *See Roberts*, 2014 WL 1270422, at *4 & n.4 (failing to reach this question at motion to dismiss stage due to lack of factual development).

[14] Sullivan and Edwards have not yet answered or asserted any affirmative defenses, such as qualified immunity. If raised, such defenses will be addressed at a later time. *See generally Modica*, 465 F.3d at 187-88 (concluding that state employees had qualified immunity for individual capacity claims because law was not clearly established, at time of violation, that executive director of state agency could be deemed "employer" under FMLA).

## VI.    Tort Claims[15]

The tort claims are asserted against GRDA and the GRDA officials in both their individual and official capacities.  The Court will first address whether the tort claims for constructive fraud and IIED are sufficiently pled and/or state a claim for relief.  The Court will then address scope of employment questions in order to determine the proper defendant.[16]  The Court will then address the civil conspiracy claim, the nature of which is dependent on the viability of other alleged torts and the scope of employment determination.

### A.    Constructive Fraud

The elements of constructive fraud under Oklahoma law are:

(1) That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;
(2) That the defendant misstated a fact or failed to disclose a fact to plaintiff;
(3) That the defendant's misstatement or omission was material;
(4) That plaintiff relied on defendant's material misstatement or omission; and
(5) That plaintiff suffered damages as a result of defendant's material misstatement or omission.

---

[15]  The tort claims include constructive fraud, IIED, and civil conspiracy.  Plaintiff did not assert a tort claim for tortious interference with contract, which seems to be the best fit for Sullivan and Edwards' alleged conduct.  *See generally Martin v. Johnson*, 975 P.2d 889, 896-97(1998) ("If an employee acts in bad faith . . . in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract.").  However, the Court has no intention of permitting amendment at this late juncture when Plaintiff failed to request such amendment even after Defendants filed their motions to dismiss.

[16]  With respect to any "official capacity" tort claim and tort claims asserted against the GRDA, Defendants argued that the Petition failed to allege exhaustion under the OGTCA and also made the additional arguments addressed below.  Following amendment, the FAC sufficiently alleges OGTCA exhaustion.  Therefore, the Court's ultimate dismissal of these claims, explained below, is based on other arguments raised in the motions to dismiss.

*Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1180-81 (10th Cir. 2008). In their motion to dismiss, Sullivan and Edwards raise two challenges: (1) that Plaintiff has failed to state a claim because neither Sullivan or Edwards owed Plaintiff a duty of disclosure under the circumstances; and (2) that Plaintiff failed to plead this claim with the requisite particularity because he made only blanket allegations against "Defendants" rather than precise allegations of the misstatements or omissions made by Sullivan and Edwards.

### 1. Duty of Disclosure

Before addressing this specific element, some general discussion of fraud is necessary. "[F]raud is a generic term embracing the multifarious means which human ingenuity can devise so one can get advantage over another by false suggestion or suppression of the truth." *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045 (Okla. 2013). There are two types of fraud – actual and constructive. "Actual fraud is the intentional misrepresentation or concealment of a material fact, with an intent to deceive, which substantially affects another person, while constructive fraud is a breach of a legal or equitable duty to the detriment of another, which does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose." *Id.* at 1045-46. Constructive fraud, which generally imposes liability in the absence of intent to deceive, requires either a fiduciary relationship or a "legal or equitable duty" that arises from the particular circumstances of the case. *See id.* at 1047 ("A fiduciary relationship imposes an absolute duty to fully disclose all material facts, and, where there is no fiduciary relationship, a legal or equitable duty to disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction.") (internal citation omitted); *see also* Okla. Stat. tit. 15, § 59 (defining constructive fraud as "any breach of duty which, without

an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him" or "[i]n any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud").

In this case, Plaintiff has brought *only* a claim for constructive fraud.[17]  Therefore, Plaintiff must allege facts giving rise to a duty of disclosure either based upon a fiduciary relationship or other particular circumstances.

a.     <u>Fiduciary Relationship</u>

A fiduciary relationship can arise as a matter of law.  *See Lowrance v. Patton*, 710 P.2d 108, 111 (Okla. 1985) (listing guardian/ward, attorney/client, and principal/agent as examples of legal relationships that always impose fiduciary duties); Okla. Unif. Jury Instr. 26.2 (same).  However, a fiduciary relationship may also arise as a matter of fact in "every possible case where there is confidence reposed on one side and resulting domination and influence on the other."  *Lowrance*, 710 P.2d at 111.  "[A] fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation."  *Id.*; *see also* Okla. Unif. Jury Instr. 26.2 ("A fiduciary relationship exists whenever trust and confidence are reasonably placed by one person in the integrity and loyalty of another, and the other person knowingly accepts that trust and confidence and then undertakes to act on behalf of the person.").

---

[17]  Because the allegations involve intentional deceit and an entire fraudulent conspiracy, Plaintiff's allegations seem to be more in the nature of actual fraud.  However, these are separate torts with different elements, and the Court will address the claim as pled.

The Court is aware of no Oklahoma case law suggesting that a manager or general counsel owes general fiduciary duties to a subordinate employee simply by virtue of their legal relationship. Law from other jurisdictions indicates that there is generally no fiduciary relationship flowing from an employer to an employee. *See, e.g., Combs v. PriceWaterhouse Coopers, L.L.P.*, 382 F.3d 1196, 1200 (10th Cir. 2004) (noting that "while an employee normally owes fiduciary duties to his employer, employers do not generally owe fiduciary duties to employees") (applying Colorado law); *J.W. v. Johnston Cnty. Bd. of Educ.*, No. 5:11-CV-707, 2012 WL 4425439, at *14 (E.D.N.C. Sept. 24, 2012) ("North Carolina courts generally do not recognize fiduciary relationships between employers and employees."). In addition, Plaintiff has not alleged any meeting of the minds or mutual obligation undertaken by Sullivan or Edwards to act on Plaintiff's behalf in advising him regarding his continued employment. To the contrary, Plaintiff's allegations are that Sullivan and Edwards hatched and executed a fraudulent plan aimed at forcing Plaintiff's resignation to cover Sullivan's wrongdoing, and that this plan ultimately resulted in Plaintiff's constructive termination. This is the precise opposite of an employer who, based on the special or unique circumstances of the case, agreed to behave as a fiduciary to an employee. *Cf. DerKevorkian v. Lionbridge Techs., Inc.*, 316 F. App'x 727, 738-39 (10th Cir. 2008) (applying Colorado law) (evidence supported jury's finding of fiduciary duty between employee and employer where employer specifically agreed to use its experience and expertise to assist employee in obtaining necessary documentation to remain a legal worker in the United States).

    b.  Specific Circumstances Regarding the Contract/Transaction

In addition to a fiduciary relationship, the circumstances of the transaction can also give rise to a duty to disclose under Oklahoma law. For example, the relevant Oklahoma Uniform Jury

Instruction lists five other instances in which a duty to disclose arises. These include: (1) the defendant has stated another fact which was true at the time he stated it, but which subsequently became untrue, and he knows the other person is acting under the impression that the fact as originally stated is still true; (2) the defendant states other facts which are true but which he knows will create a false impression of the actual facts in the mind of the other person if the material fact is not disclosed; (3) the defendant knows by his own ambiguous words or conduct he has created a false impression of the actual facts in the mind of the other person; (4) *the defendant knows the fact is peculiarly within his knowledge and the other person is not in a position to discover the fact for himself*; or (5) he previously represented the fact to be otherwise with an honest belief in its truth, and afterwards learned that the actual fact was other than as first represented. *See* Okla. Unif. Jury Instr. 18.5 (non-exhaustive lists of instances in which duty to disclose could arise).

The Court concludes that Plaintiff's allegations support a potential duty to disclose under the fourth example above. Specifically, Plaintiff has alleged that Sullivan and Edwards were in a superior position to know the opinions of the Governor and/or the Board regarding Plaintiff's employment and that Sullivan and Edwards knew Plaintiff was not likely in a position to discover this information:

> Edwards used her superior position as general counsel for GRDA to improperly negotiate between both sides of a contract dispute. Sullivan, by way of his position . . ., gained relevant information from members of the Board of Directors and the Governor of Oklahoma then withheld from and/or misrepresented this material information to Plaintiff. Through their positions at GRDA Edwards and Sullivan had access to information that was unavailable to Plaintiff from any other source.

(FAC ¶ 48.) Plaintiff has alleged that he was not in a position to ask the Governor or the unnamed Board member if Sullivan and Edwards were accurately conveying information or omitting information regarding the status of Plaintiff's employment. Therefore, Plaintiff has sufficiently

alleged a duty to disclose flowing from the GRDA officials to Plaintiff in conjunction with the terms of his Employment Agreement and/or the severance negotiations.

2. <u>Pleading Requirements</u>

Federal Rule of Civil Procedure 9(b) requires Plaintiff to set forth the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof. *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006). With respect to Sullivan, Plaintiff has satisfied these requirements by alleging that Sullivan misrepresented and/or omitted pertinent information regarding Sullivan being pressured – by the Governor and an unnamed member of the Board – to force Plaintiff's resignation. This event occurred on June 24, 2013, precipitated negotiations, and resulted in Plaintiff executing the Release, which was subject to Board approval. On or around the same date, Sullivan failed to disclose his knowledge that an employee had made allegations against Sullivan to Plaintiff, which Plaintiff contends was the motive for demanding Plaintiff's resignation.

With respect to Edwards, the allegations are less specific but still sufficient to satisfy Rule 9(b). Edwards' misrepresentations and omissions were allegedly committed over a period of time from on or around June 24, 2013 until execution of the Release on September 5, 2013. During this time, Edwards allegedly assisted Sullivan in perpetrating the fraudulent scheme by failing to disclose (1) the inaccuracy of the information regarding the Governor and the Board desiring Plaintiff's resignation; (2) Sullivan's knowledge of the harassment complaints against Sullivan made to Plaintiff; and (3) Edwards' true motivation for negotiating with Plaintiff and drafting the Release – namely, to remove Plaintiff from his position and protect Sullivan. Therefore, the underlying

factual allegations in the FAC are sufficient to satisfy Rule 9(b) and provide each Defendant notice of their allegedly fraudulent actions.

B.  IIED

In order to succeed on a claim of intentional infliction of emotional distress, a plaintiff must show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir. 1991).  To satisfy the extreme and outrageous element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (quotations omitted).  In evaluating the outrageousness of certain conduct, courts must consider the setting in which the conduct occurred, and liability does not extend "to mere insults, indignities, threats, . . . [or] occasional acts that are definitely inconsiderate and unkind." *Id.* (quotation marks omitted).  Finally, Oklahoma law directs the district court to act as a gatekeeper and make an initial determination about the validity of a claim before sending it to the jury. *Breeden v. League Servs. Corp*., 575 P.2d 1374, 1377-78 (Okla. 1978) ("The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery . . . .").

Although many employment-related factual scenarios have been deemed insufficient to satisfy the IIED standards, *see Gabler v. Smith*, 11 P.3d 1269, 1280 (Okla. Civ. App. 2000)

(collecting cases involving insults and other harassing behavior in the workplace that were deemed insufficient to support IIED claims), this Court has permitted claims to survive a motion to dismiss where the allegations went beyond a typical termination or workplace harassment scenario and instead involved a fraudulent or self-interested scheme to remove a plaintiff from otherwise protected employment, *see Murphy v. Spring*, No. 13-CV-96-TCK-PJC, 2013 WL 5172951, at *3, 10 (N.D. Okla. Sept. 12, 2013) (denying motion to dismiss IIED claims against the plaintiff's supervisors who (1) engaged in scheme to have the plaintiff terminated following the plaintiff's reporting of their wrongdoing, (2) accessed the plaintiff's private emails, and (3) used them against the plaintiff in her termination proceeding) (denying motion to dismiss IIED claim against school superintendent who allegedly terminated the plaintiff despite his knowledge of the above-described scheme of the plaintiff's supervisors); *see also Kisselburg v. AR Allen Group, Inc.*, No. 05–0715–F, 2005 WL 2897431, at *4 (W.D. Okla. Nov. 1, 2005) (denying motion to dismiss IIED claim where the plaintiff was terminated after reporting occupational safety and health risks related to dangerous repair of an aircraft).

Similarly here, Plaintiff alleges a fraudulent scheme, perpetrated by Sullivan and Edwards, to remove Plaintiff from his position in order to prevent him from revealing or reporting Sullivan's alleged wrongdoing. Manipulating a subordinate employee's termination, where such employee otherwise may be terminated only for cause during a protected term, potentially goes beyond a mere insult, indignity, or inconsiderate action in the workplace. Further, Plaintiff alleges that these defendants entered into certain negotiations with Plaintiff on the date of the death of his son, which contributed to the outrageousness of their conduct and the emotional distress he suffered. Although

the facts will be carefully scrutinized at the summary judgment stage, the facts are sufficient to state a plausible claim for IIED at the Rule 12(b)(6) stage.

C.    Scope of Employment

Under the OGTCA, determining the proper defendant (individual state official or state agency) in a tort action depends on whether the state official was acting in the scope of his employment. *See Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents of State*, 63 P.3d 535, 537 (Okla. 2003) ("A government employee acting within the scope of employment is relieved from private (individual) liability for tortious conduct, but when an employee acts outside the scope of employment the political subdivision is relieved from liability."); Okla. Stat. tit. 51, § 152.1 (extending state sovereign immunity to employees acting within the scope of their employment). "The concept of scope of employment [under the OGTCA] is thus tied to whether the employee or the government entity may be liable for a particular act." *Pellegrino*, 63 P.3d at 537.[18]

The OGTCA defines scope of employment as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud[.]" Okla. Stat. tit. 51, § 152(12).

---

[18]    Plaintiff asserts the tort claims against the GRDA officials in both their "official" and "individual" capacities. However, GRDA employees acting within the scope of their employment are "immune from liability for torts." Okla. Stat. tit. 51, § 152.1(A). A tort claim asserted against a state employee in her "official capacity" necessarily alleges that such employee acted within the scope of employment and is always improper under the OGTCA. *See id.* § 163(C); *Pellegrino*, 63 P.3d at 537 (explaining that "designating an employee in his or official capacity as a named defendant for this type of claim is improper"). Therefore, any "official capacity" tort claims against Sullivan and Edwards are dismissed for failure to state a claim. The crucial question is whether the tort claims will proceed against the GRDA employees in their individual capacities or against the GRDA.

As explained above, the allegations in this case supporting the constructive fraud and IIED claims both involve fraudulent, bad-faith conduct by Sullivan and Edwards – namely, fraudulently attempting to force Plaintiff's resignation in order to cover up Sullivan's alleged wrongdoing. Therefore, these GRDA officials were necessarily acting outside the scope of employment at the time of committing the alleged torts. *See Harmon v. Cradduck*, 286 P.3d 643, 650 (Okla. 2012) ("[A]ny malicious or bad faith act by an employee falls outside the scope of employment for purposes of the GTCA."). Because the OGTCA does not waive immunity for torts committed by employees outside the scope of their employment, the torts may proceed only against Sullivan and Edwards in their individual capacities.

      D.    <u>Civil Conspiracy</u>

Civil conspiracy, which is an intentional tort, "'consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means.'" *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997)). The essential elements are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* (internal quotation marks omitted); *see also Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla. Civ. App. 1999) ("A conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim.").

Based on the Court's ruling that any underlying torts were committed outside the scope of employment, the civil conspiracy claim asserted against GRDA and the GRDA officials in their official capacities (FAC ¶¶ 87-101) is dismissed. Plaintiff also alleges, however, an alternative civil

conspiracy claim against Sullivan and Edwards in their individual capacities. (*Id.* ¶¶ 102-112). This claim has at least one supportable premise, which is a conspiracy to commit the torts of constructive fraud and IIED. (*See id.* ¶ 103.) Plaintiff alleges that Sullivan and Edwards entered into a conspiracy to commit these torts for the purpose of "hiding indiscretions" by Sullivan and that he suffered harm as a result. (*Id.* ¶¶ 106, 108.) These allegations are sufficient to plead the five elements set forth above, and this claim shall proceed against Sullivan and Edwards in their individual capacities.

## VII.    Oklahoma Open Meeting Act

The FAC asserts that the Board, on September 11, 2003, "entered into executive session for consideration of Plaintiff's Agreement and Release, but failed to vote during the public meeting." (FAC ¶ 81.) In so doing, Plaintiff contends that the Board "willfully violated" § 307(E)(3) of the OOMA, which provides that "any vote or action on any item of business considered in an executive session shall be taken in public meeting with the vote of each member publicly cast and recorded." Okla. Stat. tit. 25, § 307(E)(3). A willful violation of this provision (1) subjects each member of the public body to criminal sanctions, and (2) causes the minutes and all other records of the executive session to be immediately made public. *Id.* § 370(F). In addition, any action taken in willful violation of the OOMA "shall be invalid." *Id.* § 313. Oklahoma courts have held that the general public may bring civil suits for injunctive relief to remediate violations of the OOMA. *See Rabin v. Bartlesville Redevelopment Trust Auth.*, 308 P.3d 191, 195 (Okla. Civ. App. 2013) (summarizing Oklahoma case law and holding that the legislature intended for citizens to bring civil suits to enforce §§ 307(f) and 313).

Defendants move for dismissal of this claim based on the FAC's failure to (1) expressly name GRDA, Sullivan, or Edwards as parties to the OOMA claim; and (2) state a plausible claim for violation of the OOMA. As explained *supra* Part II, GRDA has urged the Court to construe all claims against the Board members in their official capacity as ones against the GRDA. Therefore, the allegations are sufficient to include GRDA as a defendant to this claim.[19] However, no allegations in the FAC potentially state a claim against Sullivan and Edwards. (FAC ¶¶ 79-85.) Plaintiff argues that the FAC "sufficiently alleges [OOMA] claims against Sullivan and Edwards due to their intimate involvement in the Board's September 11, 2013 executive sessions." (*Id.* 17.) Even if these individual GRDA officials were involved in the executive session, they are not proper parties to any civil claim for injunctive relief under the OOMA. These individuals have no authority to provide or effectuate the only two available remedies – namely, invalidation of the allegedly wrongful action or making the executive session minutes public. Therefore, Sullivan and Edwards' motions are granted.

Second, the allegations support a possible violation of OOMA. Although GRDA argues that Plaintiff fails to allege that any vote or action was taken in the executive session and thus fails to state a claim, this is a cramped reading of the FAC. The Court construes it to allege that the Board considered and took action on an item of business (namely – not to accept the Release) during the executive session, rather than during the "public meeting with the vote of each member publicly cast and recorded." Okla. Stat. tit. 25, § 307(E)(3). Obviously, there are many facts yet to be developed,

---

[19] In its Notice of Removal, GRDA stated that "the Board of Directors, as a whole and in its official capacity, is one and the same as the GRDA itself and there is no distinction between the two, nor are they considered to be separate entities." (Not. of Removal 3 n.2.)

but the allegations appear to encompass conduct that plausibly violates the OOMA. Therefore, the claim shall proceed against the GRDA.

## VIII. Conclusion

Plaintiff's motion to amend (Doc. 47) is GRANTED, and Plaintiff shall file the FAC, including its two referenced attachments, no later than three days from entry of this Order. Defendants' motion for hearing on the motion to amend (Doc. 56) is DENIED. All pending motions to dismiss (Docs. 14, 15, and 16), which the Court construes as seeking dismissal of claims asserted in the FAC, are GRANTED in part and DENIED in part as follows:

Count I - Breach of Contract (against all Defendants)
      GRDA - Denied.
      Sullivan and Edwards - Granted.

Count II - Breach of Good Faith and Fair Dealing (against Sullivan and Edwards)
      Granted. Claim dismissed.

Count III - Constructive Fraud (against GRDA, Sullivan, Edwards)
      GRDA, Sullivan (official capacity), Edwards (official capacity) - Granted.
      Sullivan (individual capacity), Edwards (individual capacity) - Denied.

Count IV - FMLA (against all Defendants)
      Denied.

Count V - OOMA (against Board/GRDA)
      Granted as to Sullivan, Edwards
      Denied as to GRDA

Count VII[20] - Civil Conspiracy (against GRDA, Sullivan, Edwards)
      GRDA, Sullivan (official capacity), Edwards (official capacity) - Granted.
      Sullivan (individual capacity), Edwards (individual capacity) - Denied.

Count VIII - IIED (against Sullivan (individual capacity), Edwards (individual capacity))
      Denied.

---

[20] There is no Count VI alleged in the FAC.

The following claims remain: (1) that GRDA breached the Employment Agreement, for which Plaintiff seeks contractual damages; (2) that GRDA violated the FMLA, for which Plaintiff seeks statutory damages; (3) that Sullivan, and/or Edwards individually violated the FMLA, for which Plaintiff seeks statutory damages; (4) that Sullivan and Edwards, acting in their individual capacities, committed the torts of constructive fraud, IIED, and civil conspiracy in conjunction with Plaintiff's separation from employment, for which Plaintiff seeks tort damages; and (5) that the Board members, acting in their official capacities on behalf of GRDA, violated the OOMA on or around September 11, 2013, for which Plaintiff seeks equitable remedies provided in the statute. The fifth claim shall proceed only against GRDA.

Defendants shall be permitted to file additional motions to dismiss these remaining claims, if desired, within twenty days of Plaintiff's filing of the FAC.[21]  Defendants shall not make any duplicative arguments already addressed in this Order.

SO ORDERED this 27th day of May, 2014.


**TERENCE KERN**
**United States District Judge**

---

[21]  It is the Court's preference for all remaining arguments to be made in the summary judgment briefing, but Defendants are not precluded from filing additional motions to dismiss.