## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

MICHAEL S. "MIKE" KIEFNER, an )
individual Oklahoma resident, )
                 )
         Plaintiff, )
                 )
vs. )      Case No. 13-CV-714-TCK-FHM
                 )
DANIEL S. SULLIVAN, an Oklahoma )
resident, individually and in his official )
capacity; ELLEN CASLAVKA EDWARDS, )
an Oklahoma resident, individually and in )
her official capacity; GRAND RIVER DAM )
AUTHORITY, an agency of the State of )
Oklahoma; and BOARD OF DIRECTORS )
NOS. 1 thru 7, in their official capacities only, )
                 )
         Defendants. )

## ANSWER OF DEFENDANTS GRAND RIVER DAM AUTHORITY,
## DANIEL S. SULLIVAN IN HIS OFFICIAL CAPACITY, AND
## ELLEN CASLAVKA EDWARDS IN HER OFFICIAL CAPACITY AND
## COUNTERCLAIMS OF DEFENDANT GRAND RIVER DAM AUTHORITY

Defendants Grand River Dam Authority ("GRDA"), Daniel S. Sullivan in his official

capacity ("Sullivan"), and Ellen Caslavka Edwards in her official capacity ("Edwards")

(collectively referred to herein as "GRDA Defendants"), by and through their counsel of record,

Conner & Winters, LLP, hereby submit their Answer to the Petition[1] filed by Plaintiff Michael S.

---

[1]     This Answer is in response to the allegations in Plaintiff's original Petition filed on
September 30, 2013, due to the fact that although the Court's May 27, 2014, Opinion and Order
(Dkt. #67) granted Plaintiff's Motion to Amend his original Petition (Dkt. #47) and instructed
Plaintiff to file his First Amended Complaint ("FAC") no later than May 30, 2014, Plaintiff
failed to file the FAC and, thus, has abandoned all allegations and claims asserted in the FAC.
The Court, in its Opinion and Order, addressed all pending motions to dismiss (Dkt. #14, 15, 16),
which motions addressed Plaintiff's original Petition.  The Court noted that with the exception of
a few proposed items in the FAC, all other allegations remain the same as those in the original
Petition.  (Dkt. #67, p.2).  Consequently, GRDA Defendants interpret the Court's rulings in its
Opinion and Order to be applicable to Plaintiff's original Petition due to Plaintiff's decision to
abandon his FAC.

"Mike" Kiefner ("Plaintiff" or "Kiefner").  GRDA Defendants deny each and every allegation not specifically admitted herein, and in addition thereto, allege and state as follows:

## I.   PARTIES, JURISDICTION AND VENUE

1.      GRDA Defendants admit that Plaintiff is a resident of Creek County, Oklahoma. GRDA Defendants further admit that Plaintiff was an employee of GRDA, an agency of the State of Oklahoma, and last held the position of Assistant General Manager.  GRDA Defendants deny the remainder of the allegations in Paragraph 1 of Plaintiff's Petition.

2.      GRDA Defendants admit the first two sentences of Paragraph 2 of Plaintiff's Petition.  The remainder of the allegations in Paragraph 2 of Plaintiff's Petition state legal conclusions to which no response is necessary.

3.      GRDA Defendants admit the allegations in Paragraph 3 of Plaintiff's Petition.

4.      GRDA Defendants admit the allegations in Paragraph 4 of Plaintiff's Petition.

5.      GRDA Defendants admit the allegations in Paragraph 5 of Plaintiff's Petition.

6.      The allegations in Paragraph 6 of Plaintiff's Petition state a legal conclusion to which no response is necessary.

7.      GRDA Defendants admit that they have consented to have Plaintiff's claims heard in a federal forum.

## II.   BACKGROUND ALLEGATIONS

8.      GRDA Defendants admit that Plaintiff has served as General Counsel for GRDA. GRDA Defendants deny the remainder of the allegations in Paragraph 8 of Plaintiff's Petition.

9.      GRDA Defendants admit that there exists a purported employment agreement signed by Plaintiff and the former General Manager of GRDA, Kevin Easley, with a term from

December 1, 2010, to December 1, 2015, which Plaintiff contends is binding. GRDA Defendants deny the remainder of the allegations in Paragraph 9 of Plaintiff's Petition.

10. GRDA Defendants admit that Plaintiff became the Assistant General Manager and Chief Operating Officer of GRDA on or about June 2005. GRDA Defendants deny the remainder of the allegations in Paragraph 10 of Plaintiff's Petition.

11. GRDA Defendants deny the allegations in Paragraph 11 of Plaintiff's Petition.

12. GRDA Defendants deny the allegations in Paragraph 12 of Plaintiff's Petition.

13. GRDA Defendants deny the allegations in Paragraph 13 of Plaintiff's Petition.

14. GRDA Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of Plaintiff's Petition, and therefore deny the same.

15. GRDA Defendants deny the allegations in Paragraph 15 of Plaintiff's Petition.

16. GRDA Defendants deny the allegations in Paragraph 16 of Plaintiff's Petition.

17. GRDA Defendants deny the allegations in Paragraph 17 of Plaintiff's Petition.

18. GRDA Defendants deny the allegations in Paragraph 18 of Plaintiff's Petition.

19. GRDA Defendants admit that Plaintiff entered into negotiations with GRDA to voluntarily retire from employment. GRDA Defendants deny the remainder of the allegations in Paragraph 19 of Plaintiff's Petition.

20. GRDA Defendants deny the allegations in Paragraph 20 of Plaintiff's Petition.

21. GRDA Defendants admit that GRDA and Plaintiff entered into negotiations regarding Plaintiff's voluntary retirement, but GRDA Defendants deny the remainder of the allegations in Paragraph 21 of Plaintiff's Petition.

22.     GRDA Defendants admit that there were ongoing negotiations regarding Plaintiff's voluntary retirement, but GRDA Defendants deny the remainder of the allegations in Paragraph 22 of Plaintiff's Petition.  GRDA Defendants specifically deny that there was ever any agreement that Plaintiff would revert to his status as an employee absent approval from GRDA's Board of Directors.

23.     GRDA Defendants admit that the Board of Directors met on September 11, 2013, and held an Executive Session, but did not approve or accept the Agreement and Release. GRDA Defendants deny the remainder of the allegations in Paragraph 23 of Plaintiff's Petition.

24.     GRDA Defendants deny the allegations in Paragraph 24 of Plaintiff's Petition.

### III.     CLAIMS FOR RELIEF

### Count I: Breach of Contract

25.     GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 24 above.

26.     GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against all Defendants.  This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against Sullivan and Edwards in their official capacities.  Thus, as to GRDA Defendants, the remainder of the allegations associated with this Count are solely against GRDA and all responses to such Count herein shall refer solely to GRDA.

27.     GRDA denies the allegations in Paragraph 27 of Plaintiff's Petition.

28.     GRDA denies the allegations in Paragraph 28 of Plaintiff's Petition.

29.     The allegations in Paragraph 29 of Plaintiff's Petition state a legal conclusion to which no response is necessary.

30.      GRDA denies the allegations in Paragraph 30 of Plaintiff's Petition.

31.      GRDA denies the allegations in Paragraph 31 of Plaintiff's Petition.

## Count II: Breach of Implied Covenant of Good Faith

32.      GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 31 above.

33.      GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against Sullivan and Edwards in their official capacities.  This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against Sullivan and Edwards in their official capacities.

34.      No response is required as to the allegations in Paragraph 34 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

35.      No response is required as to the allegations in Paragraph 35 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

36.      No response is required as to the allegations in Paragraph 36 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

## Count III: Constructive Fraud

37.      GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 36 above.

38.      GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against Sullivan and Edwards in their official capacities.  This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against Sullivan and Edwards in their official capacities.

39.     No response is required as to the allegations in Paragraph 39 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

40.     No response is required as to the allegations in Paragraph 40 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

41.     No response is required as to the allegations in Paragraph 41 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

42.     No response is required as to the allegations in Paragraph 42 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

43.     No response is required as to the allegations in Paragraph 43 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

44.     No response is required as to the allegations in Paragraph 44 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

45.     No response is required as to the allegations in Paragraph 45 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

46.     No response is required as to the allegations in Paragraph 46 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

### Count IV: Violation of the Family and Medical Leave Act

47.     GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 46 above.

48.     GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against all Defendants.  GRDA Defendants deny the remainder of the allegations in Paragraph 48 of Plaintiff's Petition.

49.     GRDA Defendants deny the allegations in Paragraph 49 of Plaintiff's Petition.

50.     GRDA Defendants admit that GRDA would qualify as an employer under the Family and Medical Leave Act ("FMLA") and associated regulations, but GRDA Defendants deny committing any violation of law to justify Plaintiff filing this lawsuit against them.

51.     GRDA Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of Plaintiff's Petition, and therefore deny the same.

52.     GRDA Defendants deny the allegations in Paragraph 52 of Plaintiff's Petition.

53.     GRDA Defendants admit that Plaintiff requested leave under the FMLA on or about August 5, 2013, and GRDA granted FMLA leave to Plaintiff until August 31, 2013.

54.     GRDA Defendants deny the allegations in Paragraph 54 of Plaintiff's Petition.

55.     GRDA Defendants deny the allegations in Paragraph 55 of Plaintiff's Petition.

**Count V: Violation of the Oklahoma Open Meeting Act**

56.     GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 55 above.

57.     GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against GRDA's Board of Directors and Sullivan and Edwards in their official capacities. This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against Sullivan and Edwards in their official capacities.  None of the members of GRDA's Board of Directors has been named or served in this case and, therefore, they are not parties.  Thus, as to GRDA Defendants, the remainder of the allegations associated with this Count are solely against GRDA and all responses to such Count herein shall refer solely to GRDA.

58.     GRDA denies the allegations in Paragraph 58 of Plaintiff's Petition.

59.     GRDA denies the allegations in Paragraph 59 of Plaintiff's Petition.

60.     GRDA denies the allegations in Paragraph 60 of Plaintiff's Petition.

61.     GRDA denies the allegations in Paragraph 61 of Plaintiff's Petition.

62.     GRDA denies the allegations in Paragraph 62 of Plaintiff's Petition.

## Count VII: Civil Conspiracy

63.     GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 62 above.

64.     GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against GRDA's Board of Directors and Sullivan and Edwards in their official capacities. This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against the Board of Directors and Sullivan and Edwards in their official capacities.  Thus, this Count is dismissed in its entirety against GRDA Defendants.

65.     No response is required as to the allegations in Paragraph 65 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

66.     No response is required as to the allegations in Paragraph 66 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

67.     No response is required as to the allegations in Paragraph 67 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

68.     No response is required as to the allegations in Paragraph 68 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

69.     No response is required as to the allegations in Paragraph 69 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

70.     No response is required as to the allegations in Paragraph 70 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

71.     No response is required as to the allegations in Paragraph 71 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

72.     No response is required as to the allegations in Paragraph 72 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

73.     No response is required as to the allegations in Paragraph 73 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

74.     No response is required as to the allegations in Paragraph 74 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

75.     No response is required as to the allegations in Paragraph 75 of Plaintiff's Petition because such Count has been dismissed against GRDA Defendants.

**Count VIII: Outrage and Intentional Infliction of Emotional Distress**

76.     GRDA Defendants incorporate by reference herein their responses to Paragraphs 1 through 75 above.

77.     GRDA Defendants admit that Plaintiff alleges he has asserted a claim under this Count against Sullivan and Edwards in their official capacities.  This Court's May 27, 2014, Opinion and Order (Dkt. #67) granted GRDA Defendants' Motion to Dismiss this Count against Sullivan and Edwards in their official capacities.

78.     No response is required as to the allegations in Paragraph 78 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

79.     No response is required as to the allegations in Paragraph 79 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

80.     No response is required as to the allegations in Paragraph 80 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

81.     No response is required as to the allegations in Paragraph 81 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

82.     No response is required as to the allegations in Paragraph 82 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

83.     No response is required as to the allegations in Paragraph 83 of Plaintiff's Petition because such Count has been dismissed against Sullivan and Edwards in their official capacities.

## IV.     PRAYER FOR RELIEF

GRDA Defendants deny that Plaintiff is entitled to judgment against them as to any Count and GRDA Defendants further deny that Plaintiff is entitled to damages of any kind.

## AFFIRMATIVE DEFENSES

GRDA Defendants submit the following as affirmative defenses, subject to a determination of whether such are, in fact, affirmative defenses, or whether they are part of Plaintiff's burden of proof in this matter.

84.     First Affirmative Defense:  Plaintiff's Counts fail to state a claim upon which relief may be granted against GRDA Defendants.

85.     Second Affirmative Defense:  Plaintiff's Counts are barred in whole or in part by the doctrines of fraud, laches, unclean hands, accord and satisfaction, waiver, estoppel, equitable estoppel, and/or release.

86.     Third Affirmative Defense:  Plaintiff's Counts are barred in whole or in part by the after-acquired evidence doctrine.

87.     <u>Fourth Affirmative Defense:</u>   Plaintiff's Counts, including any liability or damages therefore, are barred by sovereign immunity.

88.     <u>Fifth Affirmative Defense:</u>   The alleged employment agreement that Plaintiff signed was not ratified or approved by GRDA's Board of Directors and is not a valid and enforceable contract.

89.     <u>Sixth Affirmative Defense:</u>   The alleged employment agreement is unenforceable because it would require GRDA to perform an illegal act.

90.     <u>Seventh Affirmative Defense:</u>   The alleged employment agreement is not valid due to failure of consideration.

91.     <u>Eighth Affirmative Defense:</u>   Plaintiff was an at-will employee at all times during his employment with GRDA.

92.     <u>Ninth Affirmative Defense:</u>   Plaintiff voluntarily retired from his employment with GRDA and he has been paid for all wages for work he performed.

93.     <u>Tenth Affirmative Defense:</u>   Any damages allegedly suffered by Plaintiff were the result of his own conduct and were not caused by or attributable to GRDA Defendants.

94.     <u>Eleventh Affirmative Defense:</u>   While GRDA Defendants deny that Plaintiff is entitled to recover any damages from them, alternatively, Plaintiff has failed to mitigate his alleged damages.

95.     <u>Twelfth Affirmative Defense:</u>   Plaintiff is not entitled to recover liquidated damages from GRDA Defendants.

96.     <u>Thirteenth Affirmative Defense:</u>   GRDA Defendants acted in good faith and had objectively reasonable grounds for believing that their conduct was not a violation of the FMLA.

97.     <u>Fourteenth Affirmative Defense:</u>   GRDA Defendants took affirmative steps to comply with the FMLA statutes and regulations.

98.     <u>Fifteenth Affirmative Defense:</u>   Sullivan and Edwards in their official capacities are not properly named as Defendants and any Counts against them are merely duplicative of Plaintiff's Counts against GRDA.

GRDA Defendants reserve the right to assert further affirmative defenses upon discovery into the matters remaining in Plaintiff's Petition.

WHEREFORE, premises considered, GRDA Defendants respectfully request that judgment be granted in their favor and against Plaintiff on all claims asserted in Plaintiff's Petition, that Plaintiff take nothing by reason thereof, that GRDA Defendants be awarded their costs and reasonable attorneys' fees incurred in defending this action, and that any other and further relief be afforded to GRDA Defendants that the Court deems just and proper.

## GRDA'S COUNTERCLAIMS AGAINST KIEFNER

GRDA, having fully responded to Plaintiff's Petition, asserts the following Counterclaims for damages against Kiefner.   In support thereof, GRDA incorporates by reference herein the statements and allegations above and further alleges and states as follows:

### I.     PARTIES, JURISDICTION, AND VENUE

1.     This Court has jurisdiction over the claims asserted in this Counterclaim and the parties to this Counterclaim.  Venue is proper in this Court.

### II.     BACKGROUND ALLEGATIONS

**A.     Kiefner's Employment With GRDA**

2.     In 2004, Kiefner was hired as General Counsel for GRDA by his longtime friend Kevin Easley ("Easley"), the General Manager of GRDA at that time.

3.      When he was initially hired, Kiefner was an unclassified employee with no guaranteed employment for any fixed period of time or for any minimum salary.

4.      However, not long afterwards, Kiefner's good friend Easley offered him an employment agreement for a fixed term of three years, from March 3, 2004, to March 3, 2007, with a minimum annual salary of $108,000.

5.      Within the next five years, Easley renegotiated Kiefner's employment agreement at least four additional times, always midway through the current agreement's three-year fixed term and always with slightly better conditions than the agreement before it, alternating between the position of General Counsel and Chief Operating Officer ("COO").

6.      Shortly before Easley's employment with GRDA ended, he offered his friend one final employment agreement, for a five-year term of employment from December 1, 2010, to December 1, 2015, a minimum salary of at least $180,000 (nearly $50,000 more than in previous agreements), and a clause that only allowed termination of the agreement by GRDA "for cause" (the "2010 Agreement").[2]

7.      All of these employment agreements were executed by Easley to benefit his close friend Kiefner and none of them were ever approved or ratified by GRDA's Board of Directors as required by law in order to be binding and legal contracts.

8.      Pursuant to Section 1 of the 2010 Agreement, Kiefner agreed to "devote the necessary time and the very best of his abilities to the business and affairs of GRDA during normal working hours and **shall use his best efforts to advance the best interests of GRDA at all times**" (emphasis added).

---

[2]     As a result of this dramatic but unauthorized increase in salary, Kiefner substantially enhanced the amount of his retirement benefits, which he has been receiving from the State of Oklahoma without interruption since September 1, 2013, and which are calculated based on Kiefner's annual salary for the three years immediately preceding his retirement.

9.       Under the 2010 Agreement, Kiefner's position was Assistant General Manager and COO of GRDA.

**B.       Kiefner's Knowledge Of Alleged Improper Conduct**

10.       In May 2012, a GRDA official ("the GRDA Official") told Kiefner about what she perceived as alleged offensive conduct towards her by Sullivan.  The GRDA Official never reported any alleged claims under GRDA's policy regarding sexual harassment.

11.       Over the course of the next year, the GRDA Official allegedly periodically informed Kiefner of alleged continued advances by Sullivan.  During this period of time, Kiefner communicated with the GRDA Official by phone, emails, and texts, and he even maintained records of the allegations through personal emails that he sent to himself from his GRDA computer.

12.       On September 30, 2013, Kiefner filed his Petition initiating this litigation, asserting that on July 25, 2012, "an officer of GRDA first informed [him] that Sullivan had made unwanted advances of a sexual nature."   Kiefner further alleges that the GRDA Official "periodically informed [him] thereafter of the continued sexual advances by Sullivan until on or about July 23, 2013."  (Petition, ¶ 14).

**C.       Kiefner's Obligations, As An Experienced and High-Ranking GRDA Executive, To Report Alleged Improper Conduct**

13.       GRDA's sexual harassment policy contains a section titled "DUTY TO ACT." The "Duty to Act" provision provides that any "supervisory employee, employee with authority for personnel matters, or other responsible agent or officer of the Authority who knows or should have known that an employee is being subjected to sexual harassment must take immediate corrective action to attempt to stop such harassment and prevent it from occurring in the future or

report the facts to the Human Resources Department Superintendent, the General Counsel or an Assistant General Counsel, or the General Manager."

14.      GRDA's sexual harassment policy further contains a "SANCTIONS" provision that states:  "Appropriate disciplinary action will be taken against any employee who causes, engages in, encourages, condones or otherwise permits sexual harassment, and against any supervisory or other responsible employee who fails to take corrective action as provided [herein].  Such conduct may be grounds for disciplinary action, up to and including dismissal."

15.      Kiefner, an attorney and longtime GRDA executive (who was then employed as the Assistant General Manager and COO, but had previously been employed as the Interim General Manager and as General Counsel) was responsible for enforcing GRDA's policies, but he himself failed to report the alleged conduct to the General Counsel, an Assistant General Counsel, GRDA's Board of Directors or to anyone in management or otherwise.

16.      The GRDA Official failed to report and/or request an investigation into the alleged conduct.

**D.      GRDA's First Knowledge Of The Alleged Conduct Was The Filing Of The Petition**

17.      GRDA's Board of Directors' and Edwards' first knowledge of the alleged conduct was when they reviewed the Petition that Kiefner filed in this litigation on September 30, 2013.

18.      Upon learning of the alleged conduct, GRDA initiated an investigation into the legitimacy of the accusations and whether any alleged sexual harassment had occurred, hiring an attorney to conduct the investigation.  Such investigation is ongoing.

19.      Contrary to the allegations in Kiefner's Petition, Sullivan was not aware that the GRDA Official had communicated with Kiefner about any alleged conduct of a sexual nature

between Sullivan and the GRDA Official.  Like Edwards and GRDA's Board of Directors, the first time that Sullivan became aware that such communications allegedly took place was upon review of the Petition that Kiefner filed in this litigation on September 30, 2013.

E.      **Kiefner Hires Attorney Stratton Taylor**

20.     In June/July 2013, Kiefner and GRDA reached an agreement concerning Kiefner's voluntary retirement.  The agreement consisted, in part, of GRDA reimbursing Kiefner approximately $17,000 gross for him to increase his retirement payments from the Oklahoma Public Employees' Retirement System.

21.     After GRDA reimbursed Kiefner the agreed amount, he hired attorney Stratton Taylor ("Taylor") to represent him in further negotiations with GRDA concerning his retirement.

22.     One of the new demands of attorney Taylor was that any agreement would have to contain a provision whereby GRDA released Kiefner of any claims that GRDA might have against him.  Although a mutual release was inserted by Kiefner into a draft agreement relating to Kiefner's retirement, Kiefner's offer had to be accepted by GRDA's Board of Directors.  The Board did not vote on the proposed agreement and it did not become effective.

F.      **After Kiefner's Retirement**

23.     Kiefner retired from his employment with GRDA effective August 31, 2013.  Upon his retirement, he was entitled to substantial monthly retirement payments from the Oklahoma Public Employees' Retirement System, which benefits he has been receiving without interruption since September 1, 2013.

24.     In discovery responses he submitted under oath in this litigation, Kiefner stated that he has been unable to work since his retirement from GRDA due to his medical conditions.

25.     Even though Kiefner receives a sizeable monthly retirement income from the State of Oklahoma and GRDA pays for his health insurance, he filed this case and continues his pursuit for actual, exemplary, and punitive damages against GRDA and Sullivan and Edwards in their individual capacities and actual and liquidated damages against GRDA and Sullivan and Edwards in their official and individual capacities.

26.     The cost of defense for this litigation on behalf of GRDA and Sullivan and Edwards is only partially covered by liability insurance and, therefore, it has substantially reduced the funds that GRDA has available to operate as a public power entity and provide other services to the community and it will directly affect the rates GRDA charges its customers.

27.     Moreover, for a small state agency with already limited resources, the time necessarily involved on behalf of the Board of Directors and various GRDA officials to defend against the meritless allegations in this litigation takes them away from their other duties and responsibilities as a low-cost provider of public power and other services.

## III.     COUNTERCLAIMS FOR RELIEF

### Count One – Breach of Fiduciary Duty

28.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 27 of its Counterclaim above.

29.     Kiefner had a fiduciary duty to GRDA due to his position as Assistant General Manager and COO, and under GRDA's sexual harassment policy to promptly report any conduct that he knew or should have known to be in violation of such sexual harassment policy.

30.     In the 2010 Agreement he contends is binding, Kiefner promised to devote his best efforts to advance the best interests of GRDA at all times.  Such a promise carries with it the imposition of trust and confidence that indicates the presence of a fiduciary relationship.

31.     To the extent that Kiefner believed the alleged conduct between the GRDA Official and Sullivan violated or may have violated the standards of conduct prohibited under GRDA's sexual harassment policy, Kiefner breached his fiduciary duty by not reporting such alleged conduct to the persons designated in the policy or to any one at GRDA, by not taking corrective action to stop such alleged harassment and to prevent it from occurring in the future, and by not taking steps to have a prompt and thorough investigation initiated into such allegations.

32.     According to Kiefner, for nearly twelve months, he had knowledge that allegations of unwanted sexual advances were being made by the GRDA Official and he failed to report them to anyone at GRDA.  This silence violated not only his duty to report such allegations, but also his duty to advance GRDA's best interests.

33.     Kiefner's breach of his fiduciary duty is the direct cause of damages sustained by GRDA.

34.     If Kiefner had promptly reported such alleged conduct, a prompt investigation and resolution of the issue would have occurred.  Instead, an investigation did not take place until after Kiefner filed his Petition, the first time that GRDA was put on notice of the alleged conduct.  This was some sixteen months after the GRDA Official allegedly first alerted Kiefner of the supposed conduct.  This prevented GRDA from conducting a prompt investigation and resulted in the expense of GRDA hiring an attorney to conduct such investigation and the expense of defending allegations in this litigation related to such alleged conduct.

35.     Moreover, in the event that GRDA or any other Defendant is found liable due to claims set forth in Kiefner's Petition or a proceeding initiated by the GRDA Official, as a result

of Kiefner's failure to take action in accordance with his fiduciary duty, then such damages would be the direct result of Kiefner's inaction and would be recoverable from Kiefner.

**Count Two – Constructive Fraud**

36.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 35 of its Counterclaim above.

37.     Kiefner owed GRDA a duty of full and prompt disclosure of any action that he perceived to be sexual harassment and/or in violation of GRDA's sexual harassment policy. This duty arose from the legal and equitable nature of their employment relationship (including the terms of the 2010 Agreement Kiefner contends is binding), and his obligation therein to advance the best interests of GRDA, GRDA's sexual harassment policy, and his fiduciary relationship with GRDA generally.

38.     Kiefner failed to promptly disclose any such action to GRDA.

39.     Kiefner's omission was material, thereby misleading GRDA that Kiefner was in compliance with his legal and equitable and fiduciary duty and the reporting terms of GRDA's sexual harassment policy.

40.     GRDA relies on its employees, including Kiefner, to report any incidents of perceived sexual harassment and/or violations of GRDA's sexual harassment policy in order that such alleged conduct could be addressed.  By maintaining his own records of the GRDA Official's allegations and not informing other members of management and/or GRDA's Board of Directors about such allegations, Kiefner's omission was material and has prejudiced GRDA with regard to the GRDA Official's allegations.  GRDA relied on Kiefner's material omission and thus had no knowledge of any alleged inappropriate conduct.

41.     GRDA has suffered damages as a result of Kiefner's material omission, as described in Paragraphs 34 and 35 of GRDA's Counterclaim above.

### Count Three – Actual Fraud

42.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 41 of its Counterclaim above.

43.     Kiefner owed GRDA a duty of full and prompt disclosure of any perceived sexual harassment and/or alleged violations of GRDA's sexual harassment policy, as described in Paragraph 37 of GRDA's Counterclaim above.

44.     Kiefner intentionally and repeatedly concealed his knowledge of the GRDA Official's allegations of improper conduct with the intent to deceive GRDA.

45.     Kiefner's intentional concealment was material, thereby misleading GRDA that Kiefner was in compliance with his legal and equitable and fiduciary duty and the reporting terms of GRDA's sexual harassment policy.

46.     GRDA has suffered damages as a result of Kiefner's intentional concealment, as described in Paragraphs 34 and 35 of GRDA's Counterclaim above.

### Count Four – Breach of 2010 Agreement

47.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 46 of its Counterclaim above.

48.     Kiefner alleges that the 2010 Agreement is a valid and enforceable contract for the term stated therein (five years).[3]

49.     In the 2010 Agreement, Kiefner promised to use his best efforts to advance the best interests of GRDA at all times.

---

[3]     GRDA denies that the 2010 Agreement is a valid and enforceable contract, however, this claim is asserted in the event the Court determines that it is.

50.     Kiefner breached the 2010 Agreement by failing to report allegations of sexual harassment to advance GRDA's interests.

51.     GRDA has suffered damages as a result of Kiefner's material breach as described in Paragraphs 34 and 35 of GRDA's Counterclaim above.

**Count Five – Breach of the Implied Duty of Good Faith and Fair Dealing**

52.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 51 of its Counterclaim above.

53.     The 2010 Agreement contained an implied duty of good faith and fair dealing with respect to Kiefner using his best efforts to advance the best interests of GRDA at all times.

54.     Kiefner breached his implied duty of good faith and fair dealing by not reporting/disclosing alleged sexual harassment and/or alleged violations of GRDA's sexual harassment policy.

55.     GRDA has suffered damages as a result of Kiefner's breach of his implied duty of good faith and fair dealing as described in Paragraphs 34 and 35 of GRDA's Counterclaim above.

**Count Six – Negligence**

56.     GRDA incorporates by reference herein the statements and averments in Paragraphs 1 through 55 of its Counterclaim above.

57.     Kiefner had a duty of full and prompt disclosure and/or to report the GRDA Official's allegations of improper conduct to GRDA.  This duty arose from the legal and equitable nature of their employment relationship (including the terms of the 2010 Agreement Kiefner contends is binding), and his obligation therein to advance the best interests of GRDA, GRDA's sexual harassment policy, and his fiduciary relationship with GRDA generally.

58.     Kiefner violated that duty by failing to report/disclose perceived sexual harassment and/or alleged violations of GRDA's sexual harassment policy.

59.     GRDA has suffered an injury that proximately results from Kiefner's violation. The harm suffered by GRDA is described more fully in Paragraphs 34 and 35 above.

WHEREFORE, GRDA prays for Judgment against Kiefner for actual and punitive damages, in an amount to be determined at trial, plus interest, costs, and reasonable attorneys' fees, and for such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ Rebecca D. Stanglein
David R. Cordell, OBA #11272
Nancy E. Vaughn, OBA #9214
Rebecca D. Stanglein, OBA #22723
CONNER & WINTERS, LLP
4000 One Williams Center
Tulsa, Oklahoma 74172
Telephone: (918) 586-8995
Facsimile: (918) 586-8695
Email: dcordell@cwlaw.com
Email: nvaughn@cwlaw.com
Email: rstanglein@cwlaw.com

*ATTORNEYS FOR DEFENDANTS GRAND RIVER DAM AUTHORITY, DANIEL S. SULLIVAN IN HIS OFFICIAL CAPACITY, AND ELLEN CASLAVKA EDWARDS IN HER OFFICIAL CAPACITY*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of June, 2014, the above and foregoing instrument was filed with the Clerk of Court using the Electronic Case Filing System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Joel L. Wohlgemuth
Valery O. Giebel
Caroline Bouscaren Lapish
NORMAN WOHLGEMUTH
      CHANDLER & JETER
401 South Boston Avenue
2900 Mid-Continent Tower
Tulsa, Oklahoma 74103

Robert S. Lafferrandre
Randall J. Wood
Jessica L. Speegle
PIERCE COUCH HENDRICKSON
      BAYSINGER & GREEN, LLP
Post Office Box 26350
Oklahoma City, Oklahoma 73126

Karen L. Long
Staci L. Roberds
ROSENSTEIN, FIST & RINGOLD
525 South Main Street, Suite 700
Tulsa, Oklahoma 74103

    /s/ Rebecca D. Stanglein
    Rebecca D. Stanglein